USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTOINE N'GOUAN ANDOH,

                              Petitioner,

-v-

WILLIAM BARR, *in his official capacity as the Attorney General of the United States*; THOMAS DECKER, *in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement*; and the U.S. DEPARTMENT OF HOMELAND SECURITY,

                              Respondents.

19 Civ. 8016 (PAE)

OPINION AND ORDER

PAUL A. ENGELMAYER, District Judge:

Petitioner Antoine N'Gouan Andoh pursues a writ of habeas corpus pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; the Immigration and Nationality Act ("INA") and regulations thereunder; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701; and the Suspension Clause, U.S. Const. art. I, § 9, cl. 2. Andoh, who faces deportation, claims that his removal would be unlawful. He urges the Court (1) to issue a writ of habeas corpus directing the Government to provide him constitutionally adequate process and (2) to stay his removal until he can fully litigate his claims currently pending before the Board of Immigration Appeals ("BIA").

For the following reasons, the Court holds that, to the extent that Andoh's petition challenges his removal, as it does predominantly, this Court lacks jurisdiction to resolve his claims and therefore dismisses these claims, without prejudice, for want of jurisdiction. The Court also holds that, to the extent that Andoh challenges his present detention, this District is the improper venue for his claims. The Court therefore transfers the habeas petition to the

District of New Jersey to address these claims. The Court extends the present stay of Andoh's removal by one week, until September 25, 2019, to give Andoh time to pursue habeas relief in the District of New Jersey, and to enable to him, if he chooses, to pursue his removal-related claims in the Second Circuit, where jurisdiction would be proper.

## I.  Background

Andoh is a citizen of the Ivory Coast. Dkt. 14 ("Gov't Mem.") at 2. On June 26, 1990, he entered the United States with nonimmigrant student status. Dkt. 1 ("Pet.") ¶ 2. After he overstayed his visa, the Government placed Andoh in removal proceedings and issued an order of removal. Gov't Mem. at 2. On April 10, 1991, that order of removal became final. *See* Pet. ¶¶ 6, 47. But, after the Government failed to secure the necessary travel documents to deport Andoh to the Ivory Coast, it placed him under an order of supervision ("OSUP"). Gov't Mem. at 3. After various immigration proceedings, on February 23, 2007, Andoh received a second final order of removal. *See id.* Andoh was again placed under an OSUP. *Id.* at 4.

Andoh has not left the United States since his arrival in 1990 and has been in full compliance with the terms of his OSUP since 1991. Pet. ¶ 5. On May 10, 2019, the Government obtained the necessary travel documents to deport him to the Ivory Coast. Gov't Mem. at 4; *see also* Dkt. 20 ("Oral Arg. Tr.") at 33–34. On July 30, 2019, Andoh, pursuant to his OSUP, went to a regularly scheduled appointment with Immigration and Customs Enforcement ("ICE"), where he was detained. *See* Pet. ¶ 53. ICE served him with a notice that the Government was revoking his OSUP because there was a "changed circumstance" in his case, namely, that it had obtained the travel documents needed for his deportation. Gov't Mem. at 4.

On August 7, 2019, Andoh filed a motion with the BIA to reopen his 2007 deportation proceedings and to issue an emergency stay of removal while such proceedings are pending. *See*

Dkt. 1-5 ("Motion to Reopen") at 2. The BIA denied the request for a stay, Dkt. 1-6 ("BIA Order") at 1, and has yet to issue a final decision on the motion to reopen.

On August 27, 2019, Andoh, while detained in an immigration facility in New Jersey, filed the instant petition for a writ of habeas corpus. *See* Pet. It asserts three bases for relief. First, it claims that removal of Andoh from the country would violate the INA, federal regulations, and the Due Process Clause, because the Government improperly revoked his OSUP (the "OSUP claim"). *See id.* at 18–21. Second, the petition asserts that removal of Andoh prior to the adjudication of his motion to reopen, pending before the BIA, would violate the APA, the INA, and federal regulations (the "motion to reopen claim"). *See id.* at 21–22. Third, and finally, it claims that removal of Andoh would violate the Suspension Clause (the "Suspension Clause claim"). *See id.* at 22.

On August 28, 2019, upon discovery that he was due to be removed from the country imminently, Andoh moved this Court for a temporary restraining order preventing his removal. Dkt. 5. That day, given the urgent nature of the case, the Court issued a temporary restraining order, barring Andoh's removal until September 9, 2019, to enable Andoh's request for emergency relief to be litigated before his removal. Dkt. 6. The Court also solicited a response from the Government by September 3, 2019 and scheduled a hearing for the morning September 9, 2019. *Id.* On August 30, 2019, Andoh filed a letter, requesting a modified briefing schedule and that the hearing be adjourned until the afternoon of September 9. Dkt. 7. The Court approved these requests. Dkt. 8.

On September 4, 2019, the Government filed its response, Dkt. 10, accompanied by a declaration of Deportation Officer Naquan Bacchus, Dkt. 11, and on September 5, 2019, an amended memorandum of law, Gov't Mem. The Government argues, *inter alia*, that the Court

lacks jurisdiction over the petition. *See* Gov't Mem. at 7–15. As to the OSUP claim, the Government asserts that the petition addresses detention, and thus, the correct venue for the petition is the District of New Jersey. *Id.* at 7–8. And as to the motion to reopen claim, the Government argues that the REAL ID Act of 2005, 8 U.S.C. § 1252, strips all district courts of jurisdiction over this kind of claim and the associated request for a stay. *See id.* at 8–15.

On September 6, 2019, Andoh filed his reply. Dkt. 16 ("Pet'r Reply"). First, Andoh asserts that venue for the OSUP claim is proper here because his petition is a "non-core" habeas petition which challenges the processes the Government used in revoking his OSUP. *See id.* at 9–10. Even if this were a core habeas petition, Andoh argues that venue is proper because his ICE custodians are located in this District. *Id.* Second, Andoh argues that his challenge to the process used for revoking the OSUP falls outside the REAL ID Act's jurisdiction stripping provision. *See id.* at 11–15.

On September 9, 2019, before argument, the Government filed a second declaration in opposition to Andoh's motion to stay, from Deportation Officer Daniel T. McDonough. Dkt. 17. The Court then heard argument and continued the stay of Andoh's removal, pending its decision. Dkt. 18. On September 10, 2019, the Government filed a letter stating that it would not remove Andoh until after September 27, 2019. Dkt. 19 ("Gov't Letter").

## II. Discussion

### A. The OSUP Claim

#### 1. Venue Standard

This Court has repeatedly held that in "core" habeas petitions, where a petitioner challenges his present physical confinement, venue is proper only in the district of confinement. *See Almazo v. Decker*, No. 18 Civ. 9941 (PAE), 2018 WL 5919523 (S.D.N.Y. Nov. 13, 2018);

*see also Li v. Barr*, No. 19 Civ. 5085 (PAE); *Blake v. McAleenan*, No. 19 Civ. 3371 (PAE); *Lateef v. Decker*, No. 19 Civ. 2294 (PAE). The substantial majority of judges in this District to consider this question have reached the same conclusion, holding that a defendant detained in New Jersey who seeks to challenge his detention, even if under the supervision of ICE personnel in this District, must bring a habeas action in the District of New Jersey. *See Almazo*, 2018 WL 5919523, at *1 (collecting cases).[1]

### 2. Application

Andoh filed his habeas petition while detained at the Bergen County Jail in Hackensack, New Jersey. Gov't Mem. at 5. For the reasons set forth in this Court's decision in *Almazo*, the Court holds that it lacks venue to the extent that Andoh's OSUP claim challenges his detention.

Seeking to avoid this line of authority, Andoh depicts his petition as a "non-core" petition, *i.e.*, one that does not challenge his detention. *See* Pet. ¶ 2. Instead, he argues that he is merely challenging the process the Government used in revoking his OSUP. *See* Pet'r Reply at 10.

That distinction does not save this Court's jurisdiction.

First, Andoh's petition, which challenges the process by which his OSUP was revoked, is necessarily challenging the revocation itself. The two cannot be decoupled. And the challenge to the revocation of the OSUP is itself unavoidably a challenge to Andoh's detention. The OSUP had been the means by which Andoh, for years, avoided detention. It permitted Andoh to be at liberty in the United States while authorization was awaited from the Ivory Coast for his deportation there. And its revocation caused Andoh to be detained pending removal.

---

[1] Since the decision in *Almazo*, Judge Nathan has joined the minority of judges holding that venue under these circumstances is proper in this District. *See Rodriguez Sanchez v. Decker*, No. 18 Civ. 8798 (AJN), 2019 WL 3840977, at *4 (S.D.N.Y. Aug. 15, 2019).

Unsurprisingly, Andoh's petition makes clear throughout that he is challenging as unlawful his present detention, insofar as it is the product of the revocation of the OSUP. *See, e.g.*, Pet. ¶¶ 70, 78.

Second, even if Andoh's challenge to the OSUP were not properly classified as a challenge to his present detention, it would certainly be a challenge to his removal. The OSUP was issued exclusively to enable Andoh to be at liberty pending receipt of the travel documents from the Ivory Coast necessary to permit Andoh's removal. And it was revoked based on the Government's determination that the necessary travel documents were in hand. Insofar as Andoh's challenge attempts to restore the OSUP as improperly revoked, his challenge serves to block the execution of his final removal order. And, as discussed below, a district court does not have jurisdiction over claims that, directly or indirectly, challenge an alien's removal.

**B. Motion to Reopen and Suspension Clause Claims**

**1. Jurisdictional Standard**

The REAL ID Act of 2005 amended the immigration laws to provide that "[n]otwithstanding any other provision of the law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). Section 1252(a)(5) "clearly preclude[s] [a] district court's entertaining of a direct challenge to a removal order," and it "applies equally to preclude . . . an indirect challenge." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). However, "a suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of relief that a plaintiff is seeking." *Id.*

In *Delgado*, the petitioner sought a stay of removal pending adjudication of an I-212 waiver necessary as a prerequisite for an adjustment of status that would render her a permanent resident. *Id.* at 54. As such, the Circuit found, "a nunc pro tunc Form I-212 waiver of inadmissibility and the adjustment of status to that of a lawful permanent resident would render the [removal] order invalid." *Id.* at 55 (internal alteration and quotation marks omitted). Because the relief sought by the petitioner would therefore automatically render her removal order invalid, the Circuit held that she was indirectly challenging that order. *Id.*

Courts in this District have applied *Delgado* to preclude district court jurisdiction over petitions by aliens whose necessary effect, directly or indirectly, would be to vacate the underlying removal order. *See Barros Anguisaca v. Decker*, No. 18 Civ. 7493 (PAE), 2019 WL 3244122, at *4 (S.D.N.Y. July 9, 2019) (collecting cases).[2]

### 2. Application

On April 10, 1991, after overstaying his student visa, Andoh received a final order of removal. Gov't Mem. at 2. On February 23, 2007, he received a second final order of removal. *Id.* at 3. In both instances, Andoh was not removed from the United States but instead placed under an OSUP, because the Government had not yet secured the travel documents needed to deport him to the Ivory Coast. *See id.* at 3–4; *see also* Oral Arg. Tr. at 33–34. On August 7, 2019, Andoh moved the BIA to reopen his 2007 proceedings and to issue an emergency stay of

---

[2] Since the decision in *Barros Anguisaca*, courts in two additional cases have applied *Delgado* in the same manner. *See Asylum Seeker Advocacy Project v. Barr*, No. 19 Civ. 6443 (JMF), 2019 WL 4221479, at *3 (S.D.N.Y. Sept. 5, 2019) (finding indirect challenge to removal order where petitioners asserted that unrepresented immigrants had not received proper notice of hearing or meaningful opportunity to be heard); *Yearwood v. Barr*, No. 19 Civ. 4709 (JGK), 2019 WL 3456738, at *6 (S.D.N.Y. July 30, 2019) (finding direct challenge to removal order where motion challenged process by which petitioner had been ordered removed and holding that petitioner could not avoid jurisdictional bar by asserting APA claim).

removal. *See* Motion to Reopen at 2. On August 27, 2019, the BIA concluded that there was "little likelihood that the motion [to reopen] will be granted," and thus denied Andoh's request for a stay. BIA Order at 1. Andoh filed this petition the same day and moved the following day for a stay of removal pending final resolution of his motion to reopen before the BIA.

Whether or not Andoh's motion to reopen before the BIA has any prospect of success, *see* Gov't Mem. at 19–20 (arguing that motion is unlikely to succeed on the merits), the Court does not have jurisdiction over his claim here for a stay of removal pending resolution of the motion to reopen. As in *Delgado*, the underlying action through whose completion petitioner seeks a stay of removal challenges the underlying order of removal. If resolved in Andoh's favor, the motion to reopen would have the effect of vacating his underlying order of removal. And Andoh, in seeking a stay of the pending removal order until that point, is unavoidably, bringing an indirect challenge to his removal order. Section 1252(a)(5) therefore strips this Court of jurisdiction to hear his motion.

Finally, Andoh's Suspension Clause claim does not provide a basis for restoring this Court's jurisdiction over his claims challenging, directly or indirectly, his removal. The federal courts of appeal, whose jurisdiction over removal claims has not been statutorily eliminated, supply an adequate substitute forum in which to seek relief. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 314 n.38 (2001); *Barros Anguisaca*, 2019 WL 3244122, at *6–7. Therefore, to the extent that Andoh's claims challenge, directly or indirectly, his order of removal, this Court lacks jurisdiction. Andoh may instead pursue relief in the Second Circuit.

## CONCLUSION

For the reasons discussed above, the Court holds (1) that venue is improper in this District with respect to Andoh's challenge to his detention; and (2) that this Court, being a

federal district court, lacks subject matter jurisdiction over Andoh's removal-related claims under 8 U.S.C. § 1252(a)(5). The Court therefore directs the Clerk of Court to transfer this habeas action to the United States District Court for the District of New Jersey, where Andoh may pursue claims challenging his detention.

Local Civil Rule 83.1 provides that "[i]n a case ordered transferred from this District, the Clerk, unless otherwise ordered, shall upon the expiration of seven (7) days effectuate the transfer of the case to the transferee court." In light of the time-sensitive nature of Andoh's claims, the Court waives the seven-day period and directs the Clerk to effectuate this transfer as soon as possible.

The Court also extends the present stay of removal for an additional week, until September 25, 2019, to ensure that Andoh will have the practical opportunity to pursue habeas relief in the District of New Jersey and his removal-related claims in the Second Circuit, and, potentially, to seek a further stay of removal from one or both of those courts.[3]

The Clerk of Court is respectfully directed to terminate the motion pending at Docket 5.

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: September 18, 2019
New York, New York

---

[3] After argument, the Government represented that it will not seek to deport Andoh before September 27, 2019. *See* Gov't Letter. While the Court appreciates this representation, a court order extending the stay of removal provides a surer guarantee that Andoh will not be removed in the next week.